NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |  |
|---|---|---|---|
| MCO & EA LLC, | | : | |
| | | : | |
| | Plaintiff, | : | **Civil Action No. 20-17100 (SRC)** |
| | | : | |
| v. | | : | |
| | | : | **OPINION** |
| SILVER GLOBE INC., | | : | |
| | Defendant. | : | |
| | | : | |

**CHESLER**, District Judge

This matter comes before the Court on a motion for costs and attorneys' fees filed by Plaintiff MCO & EA LLC ("MCO") in the amount of $3,765.91 in costs and $114,790.89 in attorneys' fees. Defendant Silver Globe Inc. ("Silver") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant MCO's motion.

## I.     Background

MCO and Silver are both sellers of teak furniture. MCO does business under the TEAKCRAFT trademark. Silver does business under the ALATEAK trademark. At the time relevant to this action, both companies sold teak shower benches, which were available on Amazon.com ("Amazon"). On or about October 15, 2020, Silver filed a report with Amazon accusing MCO of counterfeiting Silver's teak shower bench and infringing Silver's trademarks. (ECF No. 34-8). Amazon responded by suspending the product listing for MCO's shower bench on or about October 16, 2020. This suspension lasted until approximately November 19, 2020. MCO initiated this action by alleging Silver's report was false, that MCO did not infringe Silver's

intellectual property, and that the suspension of the product listing caused them to lose profits.[1] (ECF No. 1).

The action proceeded to partial summary judgment. On June 14, 2022, the Court granted partial summary judgment to MCO on its declaratory judgment claim (Count One) and granted partial summary judgment as to liability on its defamation (Count Five) and trade liable (Count Six) claims. The Court also granted summary judgment to Silver on MCO's common law unfair competition (Count Three) and tortious interference (Count Four) claims. (ECF No. 45).

Following the partial summary judgment order, the parties were slow in initiating settlement negotiations. MCO, specifically, told Silver that it had "no interest in settling." (Schielke Decl. Exh. B). On July 11, 2022, the Court ordered MCO to make a settlement offer. (ECF No. 50). MCO offered to settle for $250,000, which was considerably higher than Silver's 5-figure settlement offers.[2] (Schielke Decl. Exh. D). However, after further discussions, Silver made a Rule 68 offer of judgment in February 2023 for "$50,000, plus costs and attorneys' fees," which MCO accepted. (ECF No. 62, 63).

On March 24, 2023, MCO filed the instant motion for costs and attorneys' fees based on the offer of judgment. MCO claims $3,765.91 in costs and $114,790.89 in attorneys' fees. Silver opposes the motion in its entirety. It also opposes specific aspects of MCO's fee motion.

---

[1] Silver responded to MCO's action by initiating four counterclaims, which, asserted MCO had, among other things, infringed its intellectual property, although it ultimately withdrew these claims in an Amended Answer. (ECF No. 6, 10).
[2] Exhibit D of the Schielke Declaration also references a prior offer for $400,000, although this offer is not mentioned in the parties' briefs.

II.     **Discussion**

A.  Costs and Attorneys' Fees

The basis for awarding costs and attorneys' fees in this case is the language in the Rule 68

offer of judgment, which provides "judgment to be taken against [Silver] in this action in the

amount of $50,000.00, plus costs and attorneys' fees."  (ECF No. 62).  Generally, the text of a

Rule 68 offer of judgment is interpreted according to basic contract principles.[3]  Bilazzo v.

Portfolio Recovery Assocs., LLC, 876 F. Supp. 2d 452, 459 (D.N.J. 2012); see also M3 USA Corp.

v. Hart, No. 20-5736, 2021 WL 2917374, at *5 (E.D. Pa. July 9, 2021).  A Rule 68 offer of

judgment may provide that a judgment includes costs and attorneys' fees.[4]  See Marek v. Chesny,

473 U.S. 1, 6 (1985).  Because the offer of judgment clearly provides for costs and attorneys' fees

in addition to $50,000, the Court will grant such an award and determine its amount.  See id. ("If

an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts

the offer, the judgment will necessarily include costs . . . .").

Critically, the basis for the award is the language of the offer of judgment rather than a

statute.  This fact undermines two of Silver's arguments.  First, Silver asserts MCO's fee award

must be limited to work performed for its successful claims.  (Def. Br. at 2-3).  This may be true

---

[3] There are certain rules of interpretation specific to offers of judgment.  See, e.g., Marek v.
Chesny, 473 U.S. 1, 6 (1985) (holding a court should include a measure of costs in the judgment
even when the language of the offer of judgment is silent on the issue of costs); Lima v. Newark
Police Dep't, 658 F.3d 324, 331 (3d Cir. 2011) (holding courts may not consider extrinsic
evidence when interpreting an offer of judgment).  No Rule 68-specific rules appear to apply to
this context, and the parties have not pointed to any rule in their papers.
[4] Both New Jersey and federal law allow attorneys' fees to be authorized by agreement.
Therefore, there is no conflict between New Jersey and federal law.  See Marek v. Chesny, 473
U.S. 1, 6 (1985); State, Dep't of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 504 (1983)
(noting attorneys' fees may be authorized by contract).

in some cases, where a case involves some claims which provide for statutory fee-shifting while other claims do not.  However, there is no need to segregate fees when the basis for the fee award is contractual.  The parties have agreed to "$50,000, plus costs and attorneys' fees" in exchange for a release of all claims.  (ECF No. 62).  Nothing in the language suggest the costs and fees are limited to the viable claims at the time.  Rather, because the offer of judgment resolves the entire case, the language is best read such that "costs and attorneys' fees" covers all costs and fees reasonably accrued over the course of the action.

Second, Silver asserts that the Lanham Act only allows for attorneys' fees in exceptional cases.  (Def. Br. at 10-11 (citing 15 U.S.C. § 1117(a)).  This may be true, but once the parties have accepted the offer of judgment, the language of the offer, rather than the Lanham Act, governs attorneys' fees.  See Kawasaki Motors Corp., U.S.A. v. Finan, 577 F.2d 941, 942 (5th Cir. 1978) (granting attorneys' fees in a trademark case based on language in a franchise agreement rather than provisions of the Lanham Act).  Therefore, it is irrelevant whether this action is an exceptional case.

Turning to the issue of calculating the award, the Court interprets the provision of "costs and attorneys' fees" in the offer of judgment to be limited to reasonable costs and attorneys' fees.[5] This reading is based on common usage—judicially determined costs and fees are usually limited to reasonable figures.  Furthermore, it is informed by New Jersey's policy disfavoring attorney fee awards, and the instruction of state courts to strictly construe contractual attorney fee provisions.[6]

---

[5] The outcome of this motion would not be changed absent this limitation because, as discussed below, the Court ultimately concludes MCO's claimed costs and fees are reasonable.

[6] The Court relies on New Jersey law in this context both to the extent it governs the release of state claims, and to the extent it can inform federal common law governing any surviving federal claims.  See United States v. Kimbell Foods, Inc., 400 U.S. 715, 727-28 (1979).

See N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999) ("[E]ven where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees.").

B.  Attorney Fee Award

Turning to attorneys' fees, the Court will use the lodestar method to determine a reasonable fee award.  When using the lodestar method, courts calculate an award "by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005).  This figure may then be adjusted upward or downward to reflect, among other things, the degree of success of the prevailing party, the quality of the attorneys' work, and risk involved in taking on the case.  Id. at 305-06.  Courts often use the lodestar method in single-plaintiff-single-defendant cases like this. See, e.g., United Rentals (N. Am.) Inc. v. Liberty Mut. Fire Ins. Co., No. 19-17169, 2022 WL 7997043, at *4 (D.N.J. Oct. 14, 2022) (using the lodestar method in a single-plaintiff-single-defendant insurance case); see also In Re Centant Corp. PRIDES Litig., 243 F.3d 722, 732 (3d Cir. 2001) (citing In re Prudential Ins. Co Am. Sales Practice Litig., 148 F.3d 283, 333 (3d Cir. 1998)) (discussing the use of the lodestar method versus the percentage-of-recovery method).  In their briefs, the parties appear to anticipate the use of the lodestar method by presenting arguments responsive to the lodestar inquiry, particularly around the reasonableness of the time spent on this matter.  Therefore, the Court concludes the lodestar method best calculates a reasonable attorney fee award consistent with the language of the offer of judgment.

1.   Reasonable Number of Hours

First, the hours spent on this matter are reasonable.  MCO asserts it should be compensated

for 393.55 hours of work.  It provides breakdowns of how much time it spent on each phase of

litigation, as well as detailed invoices explaining each item of billing.  The Court has reviewed

these submissions and concludes all individual expenditures of time and the total number of hours

worked were reasonable.

Silver's arguments that MCO's hours are unreasonably high are unconvincing.  Silver's

arguments boil down to an assertion that it was unreasonable to spend 383.35 hours litigating this

case to partial summary judgment when the harm was a temporary 34-day suspension of the MCO

product's Amazon page.  However, the parties disputed the magnitude of the damages caused by

this suspension.  MCO had the right to litigate this case if it thought, in good faith, that Silver's

settlement offers were insufficient to terminate the litigation in light of its asserted damages.

Silver suggests MCO, in bad faith, "improperly delayed settlement to maximize fees."

(Def. Br. at 4).  It is true that MCO initially stated it had "no interest in settling," and later offered

$250,000, after the Court ordered it to make an offer.[7]  (Schielke Decl. Exh. B, D).  However,

MCO's conduct is more consistent with firm negotiation tactics than a bad faith delay in resolution

to run up its fees.  MCO litigated the case to partial summary judgment in its favor.  Its claims had

merit, even if damages were highly uncertain.  It was its right to demand a high settlement figure

based on its understanding of the value of the case—an understanding that was reasonable in light

of the uncertainty of the damages.  Silver is correct that the Court ordered MCO to make a

---

[7] Exhibit D of the Schielke Declaration also references a prior offer for $400,000, although this
offer is not mentioned in the parties' briefs.

settlement offer, but that alone does not mean MCO acted in bad faith.  After the Court's order

and a few rounds of offers with significant gaps between the figures, the parties did arrive at a

settlement that both sides determined was satisfactory.

Silver does not appear to argue that MCO billed unreasonable levels for a case that

proceeded to partial summary judgment, and even if it did, the Court finds MCO billed a reasonable

number of hours to arrive at that disposition.  Cf. Allstate Life Ins. Co. v. Stillwell, No. 15-8251,

2022 WL 17448838, at *5 (D.N.J. Dec. 6, 2022) (approving an award reflecting 1,248.1 hours in

an insurance action litigated to partial summary judgment); United Rentals, 2022 WL 7997043, at

*4 (approving an award reflecting 1,239.2 hours billed to obtain partial summary judgment in an

insurance case on the duty to defend and indemnify).

Silver also asserts MCO's invoices are insufficient to support the fee award because they

contain many entries listing multiple tasks, a practice commonly called block billing.  There is no

authority in this circuit categorically prohibiting block billing when submitting invoices for an

attorneys' fees motion.  Rather, the only requirement is that a "'fee application must be specific

enough to allow the district court to determine if the hours claimed are unreasonable for the work

performed,' but '[i]t is not necessary . . . to know the exact number of minutes spent nor the precise

activity to which each hour was devoted.'"  Id. (alteration and omission in original) (citing Gelis

v. BMW of N. Am., LLC, 49 F.4th 371, 379-80 (3d Cir. 2022)).  The Court has reviewed the

invoice entries that Silver claims are impermissible block billing, and concludes the entries are

sufficiently clear to understand roughly how much time was spent on different activities.  Any

ambiguity caused by including multiple tasks under a single time entry in this case is minimal.

Perhaps the most ambiguous time entry on the invoice is one for 6.5 hours spent on "Attn to reply

in support of SJ; research re same; call w/ Brett re same." (Def. Br. at 8).  Here, it is clear that an

attorney spent 6.5 hours on a single day researching and drafting the summary judgment reply

brief, which included time consulting with another attorney.  That is a reasonable use of time while

working on a summary judgment motion, and any division of the 6.5 hours between researching,

drafting, and discussion is most likely reasonable.  The same is true for the rest of the entries.  In

sum, MCO's invoice entries are sufficiently clear because they allow the Court to evaluate the

reasonableness of the claimed time.

### 2.   Reasonable Hourly Rate

MCO's lawyers have billed at a reasonable hourly rate.  MCO claims effective rates of

$432.25 per hour for an attorney with 24 years of experience, $323.10 per hour for an attorney

with 9 years of experience, effective rates below $300 for all other attorneys, and effective rates

below $200 for all paralegals.  The total blended effective hourly rate is approximately $292 per

hour.

These rates are reasonable.  Courts in the Third Circuit often use the rates set by

Community Legal Services in Philadelphia as a benchmark for reasonable hourly rates within the

geographic bounds of the Circuit.  All MCO's lawyers bill within or below the range provided by

Community Legal Services.  Considering the specifics of this case—how New Jersey lawyers with

the same experience would bill for this kind of work—the Court concludes the Community Legal

Services ranges are persuasive, and therefore, MCO's hourly rates are reasonable.  See, e.g.,

Stillwell, 2022 WL 17448838, at *4 (D.N.J. Dec. 6, 2022) (approving partner rates of $305-$615

and associate rates of $365-$425).

### 3. Adjustments

Silver makes several arguments that MCO's fee award should be reduced.[8]  The Court has already rejected several of these arguments:  specifically, that MCO needed to segregate fees associated with unsuccessful claims; that fees are unavailable because this is not an exceptional Lanham Act case; that MCO delayed settlement in bad faith to increase attorneys' fees; and that MCO's invoices contained block billing.

Silver's remaining argument, which supplements several of Silver's other arguments, is that a lodestar award may be adjusted based on the level of success obtained by the lawyers litigating the case.  (Def. Br. at 2, 4).  However, the Court is satisfied that MCO was sufficiently successful that the fee award should not be adjusted downward.  MCO successfully obtained partial summary judgment as to liability on some of its claims.  However, the damages in this case, lost profits, can often be difficult and expensive to prove.  Following several unsuccessful settlement offers, MCO accepted Silver's offer of judgment.  The judgment amount—$50,000, costs, and fees—reflects a fair degree of success given the nature of the case and the procedural posture at the time of the offer of judgment.  MCO decided to take a guaranteed recovery instead of proceeding down the risky path to a verdict.  In the eyes of the Court, MCO's recovery is fairly successful.  Therefore, it does not justify a downward adjustment.

Accordingly, because the hours spent on this matter are reasonable, MCO's lawyer's hourly rates are reasonable, and MCO was reasonably successful, the Court will award MCO $114,790.89, the entirety of its requested fee award.

---

[8] MCO does not argue the lodestar figure should be adjusted upward.

C. <u>Costs Award</u>

Finally, the Court will approve MCO's claimed costs.  The only inquiry here is whether the claimed costs are reasonable.  They are.  MCO claims $3,765.91.  This figure consists of "$400 for the complaint fee, $75 for the service fee, $2,949.00 for Veritext charges for two depositions, and $341.91 in Westlaw charges."  (Pl. Br. at 8).  MCO provides a more detailed breakdown of these costs in an attached declaration.  Lewis Decl. ¶ 49.  The Court has reviewed these costs and concludes they are reasonable in this case, which proceeded as far as partial summary judgment.  See, e.g., <u>United Rentals</u>, 2022 WL 7997043, at *5 (holding costs of $4,973.15 was reasonable in an insurance case litigated to partial summary judgment).  Therefore, the Court will award MCO $3,765.91 in costs.

**III.    Conclusion**

For the foregoing reasons, the Court will grant MCO's motion for costs and attorneys' fees in the amount of $3,765.91 in costs and $114,790.89 in attorneys' fees.

s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: May 15, 2023